UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIDDLE FORK HOLDING CO., INC, a Delaware corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>            Defendants. | Case No. CV09-440-CWD<br><br>MEMORANDUM DECISION AND ORDER |

The Court has before it Defendants' Motion to Dismiss (Docket No. 7). Having carefully reviewed the briefing submitted by the parties and the record, as well as holding oral argument on the motions on January 4, 2010, the Court finds, for the following reasons, that Defendants' Motion to Dismiss will be denied.

**I.**
**Background**

Plaintiff Middle Fork Holding Company ("Plaintiff") is the current owner of the property identified as Homestead Entry Survey No. 77, more commonly known as the Middle Fork Lodge. Plaintiff filed this action against the United States and the United States Forest Service ("Defendants") pursuant to the federal Quiet Title Act, 28 U.S.C. § 2409a, to quiet title to an alleged right-of-way across national forest land for a water diversion, ditch and pipeline from Thomas Creek to Middle Fork Lodge. (Complaint ¶17, Docket No. 1).

MEMORANDUM DECISION AND ORDER - 1

Prior to addressing the merits of Defendant's Motion to Dismiss, the Court will recount a brief history of Middle Fork Lodge and the development of its water system, as well as Plaintiff's and Plaintiff's predecessor's communications with the Forest Service.

In July of 1898, James Voller posted "notice" of a water right located on a tributary to the Middle Fork River called Thomas Creek.  By 1904, Voller had constructed a diversion and ditch high up Thomas Creek to irrigate his property, allegedly establishing a right-of-way on federal land for the upper diversion and ditch under the Act of July 26, 1866, commonly referred to as R.S. 2339.  Voller constructed two additional ditches to divert water from Thomas Creek downstream from the upper diversion to irrigate lower portions of the land (the "middle ditch" and the "lower ditch"). Voller also applied for and received approval for a homestead entry in 1910.

Bill Harrah acquired the Middle Fork Lodge in 1965, reconstructing the upper division diversion and installing a pipeline in the upper ditch to consolidate the three ditch system in 1967.  In April 1968, the Forest Service discovered the construction and met with Middle Fork Lodge representatives, predecessors in interest to Plaintiff.  On May 7, 1968 the Forest Service completed a "Trespass Report" expressing a need for a legal opinion to determine whether the construction of the pipeline in the old ditch bed was a trespass or whether the ditch and diversion is covered under Title 43 of the Bureau of Land Management Statutes.  (Declaration of Inez D'Arcangelo Ex. A, Docket No. 15-5).

Afterwards, several letters and internal memoranda were exchanged within the Forest Service to determine whether a right-of-way existed.  A few letters also were exchanged between the Forest Service and Ivan Sack, a representative of the Middle Fork Lodge.  In those letters, the

Forest Service was requesting information from Sack to aid in its determination of whether a right-of-way for the ditch and diversion had been established under the 1866 Act.   Based on these documents (the "1969 File"), Plaintiff alleges the Forest Service reached no conclusion regarding whether an R.S. 2339 right-of-way had been established and that Plaintiff's predecessor was therefore unaware the Forest Service was claiming an interest adverse to its claim of a right-of-way.

Defendants disagree, claiming that the 1969 File, and the inferences that can be drawn from it, indicate that the Forest Service had determined that no right-of-way existed and that this information must have been expressed to Plaintiff's predecessor because Plaintiff's predecessor applied for and received the first of several special use permits in 1971.[1]   However, Defendants acknowledge that there was no written communication or adjudication by the Forest Service which clearly informed Plaintiff's predecessors that the Forest Service concluded during this time period that no right-of-way existed.

On February 3, 2006, Plaintiff submitted evidence to the Forest Service that an R.S. 2339 right-of-way had been established for the upper diversion and ditch, including evidence of water rights subsequently decreed under the Snake River Basin Adjudication on October 13, 2006.  On November 29, 2006 the Forest Service issued what the Plaintiff argues is an acknowledgment of Plaintiff's right-of-way. (Complaint Exh. D, Docket No. 1).  Afterwards, Plaintiff notified the Forest Service of the need for repair to the upper diversion dam and pipeline.  The Forest Service

---

[1] Defendants claim that the special use permits are inconsistent with the right-of-way claim based partially on one of the letters from the Forest Service to Sack which states: "I am trying to determine if the ditch and diversion dam were constructed prior to 1891 and would fall under Title 43 or if it is necessary for us to issue a Special Use Permit on it." (Reply p.2, Docket No. 17 citing D'Arcangelo Decl. Exh.A p. 9, Docket No. 15-6).

approved construction plans and was in the process of approving construction methods in 2008; however, on February 25, 2009, the Forest Service issued a letter reversing its November 29, 2006 determination, asserting that new information pertinent to the alleged right-of-way had been discovered by the Forest Service during the investigation into Plaintiff's proposed construction methods.  (Complaint Exh. E, Docket No. 1).

After receiving this letter, Plaintiff filed this action.  Defendants' filed a Motion to Dismiss on the grounds that Plaintiff's cause of action accrued around the late 1960s, expiring well before the Complaint was filed in 2009.  After thoroughly reviewing the briefing and affidavits, as well as hearing oral argument, the Court will deny the Motion to Dismiss as more fully explained below.

### III.
### Discussion

**A.     Legal Standard**

A federal court may dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  In a motion to dismiss under Rule 12(b)(1) "the district court is not confined by the facts contained in the four corners of the complaint – it may consider facts and need not assume the truthfulness of the complaint." *Americopters LLC v. Fed. Aviation Admin*., 441 F.3d 726, 732 n.4 (9th Cir. 2006).  Further, the plaintiff has the burden of proving jurisdiction exists. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

**B.     Quiet Title Act**

The Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, waives sovereign immunity to certain civil actions by plaintiffs seeking to quiet title to property in which the United States claims an interest. *Kingman Reef Atoll Investments, L.L.C. v. U.S.* 541 F.3d 1189 (9th Cir. 2008).

MEMORANDUM DECISION AND ORDER - 4

However, this waiver of sovereign immunity is subject to several limitations, including a 12 year statute of limitations.  Section 2409a(g) provides:

> Any civil action under this section ... shall be barred unless it is commenced within twelve years of the date upon which it accrued.  Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

The statutory term "should have known" imparts a test of reasonableness.  Therefore, an action accrues under the QTA when the United State's actions would have alerted a reasonable landowner that the government claimed an interest in the land.  *Shultz v. Dept. of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989).[2]

Further, where a claimant seeks "fee title [to the property], notice of a government claim that created even a cloud on the title may be sufficient to trigger the limitations period." *McFarland v. Norton*, 425 F.3d 724, 726-6 (9th Cir. 2005).  However, where the claimant seeks a non-possessory interest such as an easement, "knowledge of a government claim of ownership may be entirely consistent with a plaintiff's claim." *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995).  Thus, when a plaintiff claims a non-possessory interest, an action accrues only when the government, adversely to the interests of plaintiff, denies or limits the use of the alleged easement.  *See Id*. (citing *Werner v. United States*, 9 F.3d. 1514, 1516 (11th Cir. 1993)).

In reaching this conclusion, the Ninth Circuit has reasoned:

> A contrary holding would lead to premature, and often unnecessary suits.  If a government claim to title were sufficient to trigger the running of the limitations period on any claim affecting use of the property, a claimant of a right of access

---

[2] The standard regarding abandonment in *Shultz I* was affirmed by another panel in *Shultz v. Department of the Army*, 10 F.3d 649 (9th Cir. 1993) ("*Shultz II*").  *Shultz II* was withdrawn in 1996 by another Ninth Circuit panel that did not reach the statute of limitations issue. *Shultz v. Department of Army*, 96 F.3d 1222 (9th Cir. 1996).

would be forced to bring suit within twelve years even though the government
gave no indication that it contested the claimant's right.  The claimant would be
compelled to sue to protect against the possibility, however remote, that the
government might someday restrict the claimant's access.  The statute should not
be read to create such an undesirable result.  *Id.* at 132.

However, the Court must strictly construe the QTA's statute of limitations in favor of the

government. *Shultz v. Dept. of Army*, 886 F.2d 1157 (9 th Cir. 1989) (citing *Block v. North*

*Dakota ex rel. Bd of Univ. & School Lands*, 461 U.S. 273, 287 (1983)).  Further, if the statute of

limitations has run on a waiver of sovereign immunity, the federal court lacks jurisdiction.

*Block*, 461 U.S. at 292.

Additionally, the QTA's statute of limitations is not subject to the doctrine of equitable

tolling. *Kingman Reef Atoll Investments L.L.C. v. U.S., et al.*, 545 F.Supp.2d 1103 (D. Ha. 2007),

*aff'd*, 541 F.3d 1189 (9th Cir. 2008) (citing *U.S. v. Beggerly*, 524 U.S. 38, 48 (1998)).  However,

if the government abandons its claim and subsequently reasserts its interest, the later assertion is

treated as a new claim for statute of limitations purposes.   *Shultz I*, 886 F.2d at 1161.  As

explained in *Shultz I*:

> [t]he statute of limitations provision in the Quiet Title Act cannot reasonably be
> read to imply that if the government has once asserted a claim to property, twelve
> years later any quiet title action is forever barred.  If the government has
> apparently abandoned any claim it once asserted, and then it reasserts a claim, the
> later assertion is a new claim and the statute of limitations for an action based on
> that claim accrues when it is asserted.

*Kingman Reef,* 545 F.Supp.2d at 1112-13 (quoting *Shultz I*, 886 F.2d at 1161).

Defendant argues that the Court lacks jurisdiction over this action because the statute of

limitations lapsed several decades ago.  Specifically, Defendant contends Plaintiff's predecessor-

in-interest knew, based on the "1969 File," that the Forest Service claimed adversely to

Plaintiff's predecessor that the Middle Fork Lodge did not have a legitimate right-of-way for the

pipeline.  Further, as noted above, Defendants argue that the Plaintiff's receipt of special permits for the pipeline demonstrate's Plaintiff knowledge of this adverse determination because the special use permits are inconsistent with Plaintiff's claim.  Specifically, the special use permits provide for: "'temporary use and occupancy of the premises and improvements,' for removal of all structures and improvements upon termination of the permit, and have set expiration dates." (Memo. In Support p. 5, Docket No. 7-1).

Plaintiff makes three main arguments in response: 1) there is no evidence that the Plaintiff's predecessor in interest received notice in 1969 of a Forest Service determination that the upper ditch right-of-way had not been established; 2) the existence of special use permits for the diversion and construction of the pipeline is not inconsistent with their claim of a right-of-way; and 3) even if Plaintiff's predecessor in interest knew or should have known of an adverse Forest Service claim in 1969, the Forest Service abandoned that claim on November 29, 2006. The Court will address the last argument first.

### 1. Abandonment

There are different standards regarding what constitutes government abandonment of an interest, depending on the interest claimed by the plaintiff.  Where fee ownership is claimed, the government can abandon its interest only if it abandons its original claim of right.  This requires congressional authorization.  *Kingman*, 545 F.Supp.2d at 1113.  However, less is required to prove the abandonment of an interest in an easement.  *Id*. at n. 10 (citing RESTATEMENT OF PROPERTY 504 cmt. a ("Easements may be abandoned more readily that can most interests in land...")).  The key inquiry is whether the government's actions and communications would give

plaintiff or its predecessors in interest "reason to believe the government did not continue to claim an interest in the property." *Id. (*quoting *Shultz I*, 886 F.2d at 1161).

Plaintiff claims that the Forest Service's administrative determination on November 29, 2006, meets this standard.  It states:

> Until and unless a court of competent jurisdiction, or a Federal agency who has the authority to do so, renders a decision to the contrary, the Forest Service will administer your claim as it if were in fact a valid outstanding right that encumbers the United States' fee title interest to the National Forest System land being occupied by this facility.  We will make a notation of this determination to our land status records.

(Complaint Exh. D, Docket No. 1). Defendant responds that the 2006 administrative determination is not sufficient to constitute abandonment because the language used was vague and therefore it does not rise to the level of a clear and unequivocal abandonment as identified by the Ninth Circuit in *Kingman*.  Specifically, Defendant points to the following language included in the letter: "your evidence...appears that it supports your claim..." and "...there is a high potential that you possess an outstanding right..." Further, Defendants assert the letter makes it clear that the Forest Service could not validate Plaintiff's claim, stating: "the Forest Service does not have the statutory authority to legally validate claims to real property interests in federally owned land."

The Court disagrees.  Even with the qualifying language, the November 2006 administrative determination clearly articulated the Forest Service's position with respect to Plaintiff's alleged right-of-way at that point in time.  The determination clearly states that the Forest Service would administer the land as if the Plaintiff's right-of-way was valid and would add a notation to its land status records to reflect this determination.  The language would lead a reasonable person to believe that the Forest Service was not asserting any claim adverse to its

MEMORANDUM DECISION AND ORDER - 8

claim of a right-of-way.  Therefore, the Court finds that the 2006 letter is sufficient to constitute abandonment of any claim adverse to Plaintiff's claim of a right-of-way to the extent any such adverse claim was made during communications between the Forest Service and Plaintiff's predecessor in the late 1960s.

Finally, Defendants argue that abandonment only applies if the alleged abandonment takes place within the 12 year statute of limitations.  In other words, Defendants argue that because the statute of limitations period had run on the original claim well before the alleged abandonment in 2006, the 2006 letter and its subsequent revocation would not trigger the statute of limitations again.  In support of this argument, Defendants' cite the following language from *Michel*: "[h]owever, the allegations of the complaint would permit proof that the government abandoned and then reasserted the claim of exclusive control over access within the 12 year limitations period."[3] *Michel*, 65 F.3d at 132.  The Court finds this language to be inconclusive. Further, the Court finds Defendants' argument to be unpersuasive in light of language in other Eight and Ninth Circuit cases describing application of abandonment in QTA cases.

As stated in *Shultz I* and quoted in *Michel*, "'[i]f the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted.'" *Michel*, 65 F.3d at 132 (quoting *Shultz I*, 886 F.2d at 1161).  The Eighth Circuit has used similar language, finding  that "...the government's outright abandonment effectively removes the cloud on a plaintiff's title and extinguishes his obligation to file a quiet title action

---

[3] During oral argument, Defendants' counsel conceded that *Michel* was the only case supporting Defendants' position that abandonment would not trigger a new statute of limitations period.

within twelve years.  If the government later reasserts an adverse claim, the reasserted claim is properly regarded as a new claim and a new 12 - year period beings...." *Spirit Lake Tribe v. North Dakota et al*, 262 F.3d 732, 740 (8th Cir. 2001).  This interpretation is consistent with the holding in *Kingman* that equitable tolling provisions should not apply under the QTA. Therefore, the Court finds that the assertion of the Forest Service's adverse claim to Plaintiff's claim of right-of-way in 2009 triggered the 12 year statute of limitations period under the QTA.

### 2.   1969 Forest Service determination and issuance of special use permits

As the Court has determined that the statute of limitations on the claim in Plaintiff's Complaint did not accrue until February 25, 2009, the Court need not, at this time, address the controversy over what Plaintiff's predecessor in interest knew or should have known in the late 1960s.  The parties' arguments regarding whether the special use permits were consistent or inconsistent with Plaintiff's alleged right-of-way are also not pertinent to the Court's conclusion that Plaintiff's Complaint is not time-barred.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Defendants Motion to Dismiss (Docket No. 7) is Denied.



DATED: January 7, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge

**ORDER - 10**